UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DARYISE L. EARL,

                    Plaintiff,

        v.                                        Case No. 20-cv-617-pp

STEVE R. KINZIGER, ANGELO PANOS,
JENNIFER MCDERMOTT, KWON YANG,
WISCONSIN INJURED PATIENTS AND FAMILIES
COMPENSATION FUND and DOE DEFENDANTS 1–9,

                    Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED
WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S
MOTION TO APPOINT COURT EXPERT (DKT. NO. 3), DENYING
PLAINITFF'S MOTION FOR MANDATORY INJUNCTION (DKT. NO. 8),
DENYING PLAINTIFF'S REQUEST FOR HEARING (DKT. NO. 10) AND
SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A**

---

Daryise L. Earl, an inmate at the Kettle Moraine Correctional Institution
who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging
that the defendants failed to properly treat an abscessed tooth. This decision
resolves the plaintiff's motions for leave to proceed without prepaying the filing
fee, dkt. no. 2, to appoint a court expert, dkt. no. 3, and for a mandatory
injunction, dkt. no. 8; denies his request for a hearing, dkt. no. 10; and
screens his amended complaint, dkt. no. 9.

**I.      Motion for Leave to Proceed without Prepaying the Filing Fee
        (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the
plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h).

1

The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On April 28, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $11.77. Dkt. No. 7. The court received that fee on May 20, 2020. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II.     Screening the Amended Complaint (Dkt. No. 9)

Four months after he filed his original complaint, the plaintiff filed an amended complaint. Dkt. No. 9. Fed. R. Civ. P. 15(a)(1) allows a party to amend his complaint one time without the court's permission, if he does so within twenty-one days after serving the complaint or within twenty-one days after the defendant has responded. Because the court has not yet ordered the complaint served on the defendants, the amendment is timely. The court will screen the amended complaint.

### A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to

2

state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less

3

stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The plaintiff has sued dentists Steve R. Kinziger, Angelo Panos and Kwon Yang; Kettle Moraine Warden Jennifer McDermott; the Wisconsin Injured Patients and Families Compensation Fund; and various John/Jane Doe defendants, including dental assistants, medical personnel who responded to his dental complaints and the Health Services Unit manager. Dkt. No. 9 at 2–3.

The plaintiff alleges that on June 20, 2018, Kettle Moraine dental staff saw him for a teeth cleaning. Dkt. No. 1 at ¶16. The dental hygienist performing the cleaning told the plaintiff she needed to speak with the dentist about an infection at the plaintiff's gum line. Id. at ¶17. Defendants Dr. Kinziger and Doe Defendant 1, a dental assistant, examined the infected area, and Kinziger told the plaintiff that there was a "large elevated fistula," an "abscess which is a chronic infection, left untreated can lead to other health issues." Id. at ¶18. See also Dkt. No. 1-1 at 1. The plaintiff alleges that Doe Defendant 1 told the plaintiff that he would be placed on the wait list to have the tooth above the infected area extracted. Id. at ¶19.

According to the progress notes from the June 20, 2018 visit, the plaintiff told Kinziger that the infection had "been there about a year, does not bother him at all." Dkt. No. 1-1 at 2. The plaintiff told Kinziger that he "want[ed] to wait for release to get a [sic] RCT." Id. He also told Kinziger that he had a partial crown that did not fit, so he did not wear it. Id. Kinziger informed the

4

plaintiff that "if he [was] interested in looking into options, he could send a dsr" (a Dental Service Request) and get a new partial when his other dental work was complete and if he qualified for the new partial. Id. Kinziger told the plaintiff that an untreated abscess could "lead to other health issues." Id. There is nothing in the note suggesting that the plaintiff was put on the waiting list for treatment at that time.

About five months later, on November 25, 2018, the plaintiff wrote a dental service request asking when he was supposedly scheduled to be seen by the dentist for the tooth extraction. Dkt. No. 9 at ¶20. Doe Defendant 2, a member of Kettle Moraine "medical personnel," responded to the request, writing that she assumed the plaintiff was "requesting either a filling or extraction" and stating that she would "put [him] on the list for 1 or the other—both will not be done at the same time." Id. at ¶21. The plaintiff says that Doe Defendant 2 checked the "routine wait list box" on his dental services request with the comment "five months or so." Id. at ¶22. The plaintiff alleges that Kinziger put a comment in the progress notes referring to the plaintiff's dental service request; it said "Dental Service Request form received. I believe [patient] is asking to be put on the list for an extraction or a filling, ROU list." Id. at ¶23; Dkt. No. 1-1 at 2. According to the plaintiff, Kinziger listed a "Periodontal abscess" as the description of the plaintiff's pre-existing dental conditions. Dkt. No. 1 at ¶24; Dkt. No. 1-1 at 3.

On September 9, 2019, the plaintiff wrote another dental service request, again asking about the dental appointment because of pain in the tooth above

5

the infected area. Dkt. No. 1 at ¶25. Doe Defendant 3, another member of Kettle Moraine "medical personnel," responded that the plaintiff was "on the list, cannot give exact time, will call you in when your name comes up." Id. at ¶26. The next day the plaintiff wrote to Doe Defendant 4, the HSU manager at Kettle Moraine, asking that he or she "intercede in the dental staff's lengthy delay in addressing his painful condition." Id. at ¶27. The plaintiff says that defendant Dr. Panos wrote in the patient progress notes that he'd received the plaintiff's second dental service request on September 10, 2019. Id. ¶28. On September 11, 2019, the plaintiff wrote a third dental service request, noting that his "medical needs can[]not wait the duration of [his] placement on the wait list;" he stated that he was in pain and "need[ed] to be seen A.S.A.P." Id. at ¶29. The same day, the plaintiff wrote to Warden McDermott, asking that "she override the dental staff's decision to outright ignore the severity of his condition, and asked to compel them to provide immediate dental care." Id. at ¶30.

The plaintiff says that up to this point, he'd been experiencing "sickly symptoms of what he believed to be the stomach flu (occasional vomiting, upset stomach, and diarrhea)." Id. at ¶31. At about 6:20 a.m. on September 12, 2019, the plaintiff informed a correctional officer that he had been unable to sleep or eat regularly because he had a severe tooth ache "and what he thought to be the stomach flu." Id. at ¶32. The officer allowed the plaintiff to eat his breakfast and lunch trays in his cell that day, even though Kettle Moraine rules require that all meals must be eaten in the dayroom. Id. at ¶¶33-34. At 10:40

6

a.m. the officer woke the plaintiff and instructed him to report to the HSU. Id. at ¶35. The plaintiff alleges that shortly after he awoke, he immediately went to the bathroom to "address the sudden urgency sensation he was having from a violent bout of diarrhea." Id. at ¶36. The plaintiff says that after he brushed his teeth and used the bathroom, the corrections officer stopped him as he was leaving the housing unit, telling him that the dentist had called to say that the plaintiff's appointment was canceled because he didn't timely report to the health services unit. Id. at ¶37. The plaintiff says that defendant Panos also had told the corrections officer that Panos was going home for the day. Id. at ¶38. The plaintiff asserts that Panos wrote a comment in the progress notes, saying that the plaintiff had missed his appointment because he was called at 10:38 a.m. and at 11:03 when the HSU called the unit officer to see if the patient was on his way, the unit officer reported that the patient was still washing his face and was "slow getting ready for his appointment." Id. at ¶39; Dkt. No. 1-1 at 3. The plaintiff wrote to Doe Defendant 4 the same day to explain that his delay should have been excused because the "violent diarrhea" had prevented him from going to the HSU, and he asked to be seen by a dentist immediately. Dkt. No. 1 at ¶40.

Panos stated in the patient notes for that day that "[i]t was decided to no show the patient today due to the patient delay in arriving to dental in a timely manner. We will reschedule one more time according to policy." Dkt. No. 1-1 at 3. There is no indication that Panos rescheduled the plaintiff.

Two days later, the plaintiff wrote a fourth dental service request, stating that he still needed to be seen immediately for the painful tooth abscess. Dkt. Id. at ¶41. The plaintiff indicates that although he never received a response to this request, the HSU stamped it received on September 15, 2019. Id. at ¶42. He says that Doe Defendant 5, a member of Kettle Moraine "medical personnel," checked the box for "Essential Wait List" on the dental service request. Id. at ¶43. On September 15, 2019, the plaintiff wrote to McDermott again to "attempt to explain the debacle regarding the dental staff delay in treating his infected tooth, and to request that she intervene by commanding the dentist to provide immediate dental assistance. Id. at ¶44. Two days later, McDermott denied the plaintiff's request, telling him that it was "important that your health care concerns are addressed through the Health Service Unit . . . No further action will be taken regarding this matter." Id. at ¶45. The same day—September 17, 2019—Panos wrote in the plaintiff's patient progress notes that he had received the plaintiff's dental service request. Id. at ¶46.

On the morning of September 19, 2019, the plaintiff awoke in "excruciating pain from the infected tooth." Id. at ¶47. He asked the correctional officer to call a supervisor because "his painful dental condition could not be prolonged any longer." Id. at ¶48. The corrections officer told the plaintiff that a sergeant would be coming to the unit shortly and that the plaintiff should wait until the sergeant arrived to properly address his medical concerns. Id. at ¶49. The plaintiff spoke to the sergeant when he/she arrived, and the sergeant called the HSU and assured the plaintiff that he would be

8

seen by the dentist that day. Id. at ¶50. Several hours later, Dr. Tommy Urbanowicz (not a defendant) extracted the plaintiff's infected tooth. Id. at ¶51. After the tooth had been extracted and the plaintiff had taken a prescribed antibiotic, his stomach flu-like conditions ceased. Id. at ¶52. The plaintiff notes that before the tooth extraction, he had not been prescribed any pain medication or antibiotics when he complained of pain from the tooth. Id. at ¶53.

The plaintiff says that the abscess wasn't the only dental issue revealed during his June 20, 2018 tooth cleaning. Id. at ¶54. The dental staff informed him that he needed a filling. Id. at ¶55. The plaintiff says that on November 28, 2018, Kinziger documents receipt of a dental service request from the plaintiff asking for the filling. Id. at ¶56. He says that Panos documented receipt of two more dental services requests asking for the filling—one on September 9, 2019 and one on September 27, 2019. Id. at ¶57. The plaintiff says that after the abscessed tooth was pulled, the dental assistant informed him that because he'd had that tooth extracted, "his name would then be placed at the bottom of the dental waiting list to be seen by the dentist for the filling procedure." Id. at ¶¶58-59.

The plaintiff says that when the tooth with the cavity started to become sensitive, he wrote another dental service request asking for the filling procedure; he says this request was received on January 21, 2020. Id. at ¶60. The plaintiff says that Panos documented receiving this request on that date. Id. at ¶61. On March 12, 2020, the plaintiff submitted another dental service

request, indicating that the tooth had become painful and that he needed the filling as soon as possible. Id. at ¶62. The plaintiff says that this request was documented as received by Dr. Yang on March 16, 2020. Id. at ¶63.

The plaintiff explains that on March 17, 2020, the dental staff saw him, but that without examining the tooth the dentist (he does not say which one) told him that due to the COVID-1 pandemic the only treatment the dentist could provide was tooth extractions. Id. at ¶64. The plaintiff says that he declined the tooth extraction. Id. at ¶64.[1] The plaintiff indicates that the dental staff informed him that his name had not been placed on the dental waiting list until they had received the dental service request on January 21, 2020. Id. at ¶65. The plaintiff asserts that Yang documented receipt of several dental service requests asking for the filling—March 24, May 1, May 5 and July 15, 2020. Id. at ¶¶66, 68. The plaintiff says that the dental staff responded to the request received on March 25, 2020 by telling him that he was on the waiting list but that only emergencies and essential procedures would be seen due to the outbreak. Id. at ¶66.

The plaintiff sues the defendants in their individual capacities. Dkt. No. 9 at 2–3. He seeks punitive and compensatory damages, an award of "noneconomic damages in the maximum amount for each occurrence of malpractice" and "noneconomic damages in the maximum amount for future medical expenses linked to the Defendants negligent action." Id. at 13.

---

[1] The amended complaint has two paragraphs numbered "64."

10

C.    <u>Analysis</u>

The plaintiff first asserts that the defendants were deliberately indifferent to his serious medical need in violation of the Eighth Amendment. The Eighth Amendment prohibits cruel and unusual punishment. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." <u>Id.</u> at 105. To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." <u>Petties v. Carter</u>, 836 F.3d 722, 728 (7th Cir. 2016) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." <u>Farmer</u>, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk. <u>Id.</u> at 837; <u>Perez v. Fenoglio</u>, 792 F.3d 768, 776 (7th Cir. 2015). Neither negligence nor medical malpractice are sufficient to state an Eighth Amendment claim. <u>See</u> <u>Farmer</u>, 511 U.S. at 835–36; <u>Estelle</u>, 429 U.S. at 106; <u>Brown v. Peters</u>, 940 F.3d 932, 937 (7th Cir. 2019).

"A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." <u>Arnett v. Webster</u>, 658 F.3d 742, 753 (7th Cir. 2011) (citing <u>McGowan v. Hulick</u>, 612 F.3d 636, 640 (7th Cir. 2010)). The length of delay that is tolerable "depends on the seriousness of the

condition and the ease of providing treatment." Id. (quoting McGowan, 612 F.3d at 640).

Kinziger

The plaintiff alleges that Kinziger saw him in June 2018 and observed the abscess. According to the progress notes from the examination, the plaintiff told Kinziger that at that time, the abscess did not bother him or cause him discomfort. It does not appear that Kinziger (or anyone else) put the plaintiff on the waiting list for an extraction at that time. The plaintiff wrote his first dental service request asking about extraction in November 2018. Kinziger responded that the plaintiff appeared to be requesting either an extraction or a filling and noted that the plaintiff had a "periodontal abscess." The plaintiff alleges that it took until September 2019—fifteen months after Kinziger first noticed the abscess and ten months after the plaintiff wrote his first dental service request asking about extraction—for him to receive treatment for the abscess and that he suffered significant pain in the meantime. The plaintiff implies that Kinziger should have known that the abscess needed immediate treatment.

In Dobbey v. Mitchell-Lawshea, 806 F.3d 938 (7th Cir. 2015), the Seventh Circuit considered a plaintiff's claim that a dentist was deliberately indifferent when she did not treat the plaintiff's abscess until sixteen days after diagnosing it. The district court had granted summary judgment in favor of the defendants. Id. at 940. The Seventh Circuit disagreed. Judge Posner wrote:

> The decision of a medical professional to do nothing, even though she knows that a patient has a serious medical condition requiring prompt treatment that the professional is capable of and responsible for providing, amounts to deliberate indifference. Any minimally

12

competent dentist who knows that a patient has reported an abscess also knows that if the report is correct the patient needs prompt medical treatment. A dentist demonstrates deliberate indifference by failing to treat the patient promptly, thus prolonging the patient's pain, while knowing that the patient may well be in serious pain that is treatable.

\*\*\*

In granting summary judgment in favor of the defendants, the district judge failed to appreciate the gravity of a tooth abscess or attach sufficient weight to the slack response of prison staff to Dobbey's medical problem. A tooth abscess is not a simple toothache. It is a bacterial infection of the root of the tooth, and it can spread to the adjacent gum and beyond—way beyond. It is often painful and can be dangerous. Loss of the tooth is common, though can sometimes be prevented by prompt detection and treatment of the abscess. Dobbey does not connect his abdominal woes to the abscess, but he may well not have known that stomach pain, nausea, and vomiting are common consequences of a tooth abscess and so may have been caused or aggravated by his abscess.

Because the bacteria in an abscessed tooth can spread to other vital organs and even cause death, prompt treatment is imperative. The district judge remarked that the prison dentist may not have realized that [the plaintiff] had a "serious" abscess. Any tooth abscess is serious; any dentist knows that. Dobbey did not receive prompt treatment; he received a series of runarounds, experienced weeks of pain, and lost the tooth. The critical question is whether the botched treatment can be ascribed to deliberate indifference . . . or was merely negligence, in other words malpractice, which is not a violation of the Eighth Amendment.

Id. at 940.

Given this, the court must conclude that at the screening stage, the plaintiff has stated sufficient facts to allow him to proceed on an Eighth Amendment claim against Kinziger for deliberate indifference in failing to promptly treat the abscess.

The plaintiff also asserts that Kinziger received his November 2018 dental service request asking for a filling. This appears to have been Kinziger's

13

only role in the plaintiff's failure to receive a tooth filling. And a cavity in a tooth is not necessarily the kind of serious medical condition Judge Posner described an abscess as being. The court will not allow the plaintiff to proceed on a deliberate indifference claim against Kinziger in relation to the filling.

Doe Defendant #1

Doe Defendant #1 is the dental assistant who noticed the infection and brought Kinziger to examine it. The fact that the defendant noticed the abscess and got a doctor to look at it hardly sounds like deliberate indifference. But the plaintiff also says that this defendant told him he would be put on a waiting list to have the tooth extracted. It is not clear whether the assistant put the plaintiff on the waiting list at Kinziger's direction. Nurses—and, presumably, dental assistants—"may generally defer to instructions given by physicians." Perez v. Fenoglio, 792 F.3d 768, 779 (7th Cir. 2015). But nurses—and presumably dental assistants—can be held liable if they knowingly disregard a risk to an inmate's health, and nurses have a professional obligation to take appropriate action if they see a doctor engaging in an inappropriate or questionable practice. Id. (citations omitted). At the screening stage, the court will allow the plaintiff to proceed against Doe Defendant #1 for indicating that the plaintiff would be placed on a waiting list rather than insisting on prompt treatment.

Doe Defendant #2

Doe Defendant #2 is the member of the prison medical staff who responded to the plaintiff's November 26, 2018 dental service request by saying

14

that the plaintiff would be put on a waiting list for either a filling or an extraction or not both. The court will not allow the plaintiff to proceed against this defendant. The plaintiff does not say that he stated in the November 26, 2018 dental service request that he was suffering from an abscess. He says only that he wrote to enquire about the date he was supposed to be seen for a tooth extraction. There is no indication that Doe Defendant #2 knew that the plaintiff was suffering from an abscess; it is the abscess that was the serious medical condition that posed a risk if treatment was delayed.

Doe Defendant #3

Doe Defendant #3 responded to the defendant's September 9, 2019 dental service request. The plaintiff says that in this request, he stated that he was asking about his dental appointment due to the pain caused by a tooth "located above the infected area of his guns." Doe Defendant #3 responded that the plaintiff was on the waiting list and would be called when his name came up. The plaintiff does not state whether Doe Defendant #3 was a medical professional—a doctor, nurse or dental assistant—or simply someone who worked in the office. But the plaintiff has alleged that this person would have known that he was in pain, and yet did not act to make sure he received prompt attention. The court will allow the plaintiff to proceed on a deliberate indifference claim against Doe Defendant #3.

Doe Defendant #4

Doe Defendant #4 is was the manager of the Health Service Unit. The plaintiff says that he wrote to the HSU manager on September 10, 2019, asking

15

the manger to "intercede" the delay in addressing his painful condition. The plaintiff does not state whether the HSU manager received his letter. He does not state whether he described the painful condition or explained how long he had been in pain.

The plaintiff wrote Doe Defendant #4 again on September 12, 2019, arguing that his delay in getting to the appointment with Panos should have been excused because one of the reasons he was late was that he was having violent diarrhea; he also asked to be seen by a dentist immediately. The plaintiff's implication is that the HSU manager did nothing, although again, he does not indicate whether the manager received the letter or had any reason to know what the missed appointment was for.

The court will allow the plaintiff to proceed against the HSU manager, although his allegations against the manager are thin.

<u>Panos</u>

Defendant Panos first learned of the plaintiff's abscess on September 10, 2019, when he received the plaintiff's second dental service request. Panos arranged to see the plaintiff two days later but left for the day after waiting twenty-five minutes for the plaintiff to show up for the appointment. Because Panos wrote in the progress notes, he had reason to know that the plaintiff suffered from an abscess. He indicated in the patient notes that he would reschedule the appointment. On September 17, 2019, Panos received the plaintiff's fourth request for treatment; there is no indication in the notes that Panos scheduled another appointment or addressed the plaintiff's pain in the

16

interim. A week after the initially scheduled appointment, the plaintiff underwent the emergency extraction of his tooth.

While the court understands that Panos left before the original appointment because he had waited twenty-five minutes and HSU was informed that the plaintiff was "washing his face and slowing [sic] getting ready for his appointment," it does not appear that Panos rescheduled the appointment despite writing in the progress notes that he would, "according to policy." The plaintiff waited another week, in pain and eventually sick, before receiving treatment. At this stage of the proceedings, the plaintiff has stated sufficient facts for the court to allow him to proceed on an Eighth Amendment claim against Panos relating to the failure to treat the abscess.

The plaintiff also alleges that Panos documented receipt of his January 2020 request for the filling procedure. The plaintiff does not indicate that he stated in that request that he was in pain, and he does state that staff later told him that he was placed on the waiting list upon receipt of this request. The court will not allow the plaintiff to proceed on a deliberate indifference claim against Panos relating to the tooth filling.

McDermott

The plaintiff has not stated a claim against Warden McDermott. He alleges that he wrote to McDermott twice—once on September 11 and once on September 15—and that she failed to override the doctors and order immediate treatment. Non-medical officials like the warden are entitled to "rely on the expertise of medical personnel" and "will generally be justified in believing that

17

the prisoner is in capable hands." Arnett, 658 F.3d at 755 (citing Greeno v. Daley, 414 F.3d 645, 656 (7th Cir. 2005)). Only when a nonmedical official ignores an inmate's complaints or has sufficient notice of "an excessive risk to inmate health or safety" that she may be found deliberately indifferent for not taking action. Id. (quoting Vance v. Peters, 97 F.3d 987, 993 (7th Cir. 1996)). McDermott did not ignore the plaintiff's requests; she told him it was important that his "heath care concerns [were] addressed through the Health Service Unit." Dkt. No. 1 at ¶39. The plaintiff does not allege that McDermott knew the plaintiff's condition presented an excessive risk to his health or that as a nonmedical staff member, she would have any way to know what treatment he should receive.

Doe Defendant #5

Doe Defendant #5 marked the "Essential Wait List" on the plaintiff's third dental service request. This request stated that the defendant needed to be seen immediately for a painful tooth abscess. As with Doe Defendant #3, the plaintiff does not indicate whether Doe Defendant #5 was a medical professional. But he does state that the person would have had reason to know that he was in pain. The court will allow the plaintiff to proceed against Doe Defendant #5.

Yang

The plaintiff alleges that Yang documented receipt of five dental service requests from the plaintiff over four months, all asking for the filling procedure and at least one—the March 12, 2020 request—indicating that the plaintiff was

18

in pain. It is a closer call whether the plaintiff has stated a claim against Yang. On the one hand, the plaintiff alleges that Yang had reason to know that he was in pain for several months. On the other hand, the plaintiff admits that he was told that due to the coronavirus pandemic, only emergency procedures and tooth extractions could be performed, and it appears he was offered a tooth extraction and declined it. At the screening stage, the court will allow the plaintiff to proceed against Yang on a claim that he was deliberately indifferent to the plaintiff's pain, but notes that medical professionals outside the prison setting have limited medical procedures due to the pandemic.

Doe Defendants #6-9

The plaintiff alleges that Doe Defendants #6 through #9 were negligent. The court already has stated that mere negligence is not enough make a defendant liable for a constitutional violation under the Eighth Amendment. The plaintiff may not proceed against these defendants for deliberate indifference.

The plaintiff also alleges negligence under Wisconsin law, however. A federal court may exercise supplemental jurisdiction over state-law claims if those claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367. The plaintiff's claims against these defendants lack detail. At this point, the court will allow the plaintiff to proceed on supplemental state-law negligence claims against these

19

defendants, but will dismiss them if, after discovery, the plaintiff does not identify anyone who was negligent regarding the filling.

<u>Wisconsin Injured Patients and Families Compensation Fund</u>

The court suspects that the defendant has named this fund as a defendant because he believes he must do so in order to receive damages if he prevails. But this fund is not a proper defendant in a lawsuit under §1983. The court will dismiss the fund as a defendant.

**III.    Motion to Appoint Court Expert (Dkt. No. 3)**

The plaintiff filed a motion asking the court to appoint "a neutral expert witness to provide an in-depth explanation into the complexity of the medical data associated with the significantly detrimental side effects caused when a dental abscess is left untreated." Dkt. No. 3 at 1. The plaintiff cites Fed. R. Evid. 706, which allows a party to move for appointment of an expert witness. <u>Id.</u>

The plaintiff's motion is premature. The next step in the litigation is for the court to order the complaint served on the defendants and for the defendants to respond to the allegations in the complaint. Once they have done so, the parties will have the opportunity to conduct discovery, asking each other for documents and information about the plaintiff's allegations. That will take some time. After that, the parties will have the opportunity to file dispositive motions.

There may come a time when the plaintiff will need a medical expert to help the court or a jury understand the effects of delayed treatment of an

abscess or a cavity that needs filling. When that time comes, the plaintiff may renew his motion. The court will deny it without prejudice.

### IV.    Motion for a Mandatory Injunction (Dkt. No. 8)

The plaintiff has asked the court for a "a mandatory injunction" ordering the defendants to provide him "the necessary dental treatment the Defendants have unduly prolonged for far too long." Dkt. No. 8 at 1. The plaintiff states that he has a painful cavity, diagnosed over two years ago, that the defendants have not treated. Id. He asserts that he submitted requests for treatment in March 2020, but that staff informed him that "due to the COVID-19 pandemic," the dental office would perform only emergency and essential procedures. Id. at 2 n.2. The plaintiff wants the tooth filled. Id. Dental staff offered to extract the plaintiff's painful tooth, but he declined. Id.

The plaintiff says that if he doesn't receive the filling, he "will continue to endure unnecessary pain" and possible further deterioration of his tooth. Id. at 3. He states that his requests for treatment have gone unanswered, leaving him no other remedy. Id. He insists that, as he alleges in his complaint, the defendants' behavior is "so blatantly callous" that he is certain to succeed on the merits. Id. at 4.

The plaintiff waited a month, but when he did not hear from the court on this motion, he filed a letter asking the court to schedule a hearing. Dkt. No. 10.

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the

burden of persuasion." <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997). The purpose of such an injunction is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." <u>Fahenm-El v. Klincar</u>, 841 F.2d 712, 717 (7th Cir. 1988). To obtain a preliminary injunction, the plaintiff has the burden of establishing that (1) he is likely to succeed on the merits of his claim; (2) he has no adequate remedy at law; and (3) he is likely to suffer irreparable harm without the injunction. <u>Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health</u>, 699 F.3d 962, 972 (7th Cir. 2012), citing <u>Am. Civil Liberties Union of Ill. v. Alvarez</u>, 679 F.3d 583, 589-90 (7th Cir. 2012).

In prisoner litigation, the court's authority to issue an injunction is limited by the PLRA. <u>Westefer v. Neal</u>, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); <u>see also</u> <u>Westefer</u>, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prisons officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).

The court will deny the plaintiff's motion for several reasons. First, because injunctive relief is extraordinary, there is a procedure that a party seeking injunctive relief must follow. Under Fed. R. Civ. P. 65, the party must

attempt to give notice to the entity he is seeking to enjoin or certify in writing why he was not able to do so. He must post a security bond. The plaintiff has not followed these procedures.

Second, the plaintiff is asking this court—which has no medical expertise—to tell prison medical staff how to treat the plaintiff. As the court noted above, the coronavirus pandemic has caused many medical professionals to curtail nonemergency procedures and treatments. This court has no way of knowing whether the defendant's unfilled tooth is an emergency or how it should be treated. The court will not play the role of a doctor and tell prison staff that it must deem the plaintiff's unfilled tooth an emergency or how it must treat that tooth.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion for appointment of an expert witness. Dkt. No. 3.

The court **DENIES** the plaintiff's motion for a mandatory injunction. Dkt. No. 8.

The court **DENIES** the plaintiff's motion for a hearing on his motion for a mandatory injunction. Dkt. No. 10.

The court **DISMISSES** Jennifer McDermott, Doe Defendant #2 and the Wisconsin Injured Patients and Families Compensation Fund.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Steve R. Kinziger, Angelo Panos and Kwon Yang. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within 60 days.

Because the plaintiff has sued Doe Defendants, he will need to use discovery to learn their names. After the named defendants have an opportunity to respond to the complaint, and after the court sets deadlines for the completion of discovery and the filing of dispositive motions, the plaintiff may serve discovery requests upon the named defendants in an effort to learn the Doe defendants' names. Once he learns the names, the plaintiff must file a motion to substitute the names for the Doe placeholders.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$338.23** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court will issue a separate order **REFERRING** this case to Magistrate Judge William E. Duffin for pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. It is the plaintiff's responsibility to notify the court if he is transferred to another facility or released. If the plaintiff fails to notify the court promptly of any changes in his

25

address, the court could dismiss the case for his failure to diligently prosecute it.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 17th day of November, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**