UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DARYISE L. EARL,

           Plaintiff,

v.                                         Case No. 20-cv-617-pp

STEVE R. KINZIGER, *et al.*,

           Defendants.

---

**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT NEUTRAL EXPERT (DKT. NO. 110), DENYING PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO RESPOND TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 111), DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 118) AND DENYING AS PROCEDURALLY IMROPER PLAINTIFF'S MOTION FOR CLARIFICATION (DKT. NO. 121)**

---

On November 18, 2022, the defendants moved for summary judgment. Dkt. No. 97. Four days later, the court ordered that by the end of the day on December 19, 2022, the plaintiff must file his response to the defendants' motion. Dkt. No. 107. The plaintiff did not file a response. Instead, on December 21, 2022, the court received from the plaintiff a motion for an extension of time to respond to the defendants' motion. Dkt. No. 108. The court granted that motion the next day and ordered the plaintiff to file his response materials by the end of the day on January 6, 2023. Dkt. No. 109. Again the plaintiff did not file his response. Instead, on January 11, 2023, the court received the plaintiff's second motion for an extension of time to respond to the defendants' motion, dkt. no. 111, and a motion to appoint a neutral expert, dkt. no. 110. The court ordered that by January 20, 2023, the defendants must

1

respond to the plaintiff's motion to appoint a neutral expert, which they did. Dkt. No. 113. The court ordered the plaintiff to file his reply brief in support of his motion to appoint a neutral expert by February 3, 2023. Dkt. No. 112. On February 2, 2023, the court received from the plaintiff yet another request for an extension of time, this time asking for more time to file his reply brief. Dkt. No. 114. The court granted that motion in part and ordered the plaintiff to file his reply brief by the end of the day on February 17, 2023. Dkt. No. 116. Specifically, the court ordered the plaintiff to file his motion in time for the court to "*receive* the reply by the deadline." Id. The plaintiff did not comply with that order, and the court did not receive his reply brief until February 22, 2023—five days later. Dkt. No. 117. The same day, the court received the plaintiff's motion to appoint counsel. Dkt. No. 118.

## I.    Motion to Appoint a Neutral Expert (Dkt. No. 110)

The plaintiff twice previously asked the court to appoint a neutral expert. The court denied the first request in its November 17, 2020 screening order, explaining that it was premature. Dkt. No. 11 at 20. The court explained that "[t]here may come a time when the plaintiff will need a medical expert to help the court or a jury understand the effects of delayed treatment of an abscess or a cavity that needs filling. When that time comes, the plaintiff may renew his motion." Id. at 20–21. The plaintiff renewed his motion on July 16, 2021. Dkt. No. 49. The court again denied that motion, explaining that it still was premature because only one party had moved for summary judgment, and that motion was based on statutory interpretation and not on resolution of medical

2

Case 2:20-cv-00617-PP   Filed 06/08/23   Page 2 of 14   Document 122

questions for which medical expertise might be needed. Dkt. No. 53 at 9–10. The court explained, "If any of the other defendants file a motion for summary judgment in which they argue that the court must find, as a matter of law, that they did not provide insufficient medical care to the plaintiff, the plaintiff may renew his motion to appoint an expert and the court will consider it." Id. at 10–11.

The plaintiff now asserts that the court must appoint a neutral expert who can "describe in layman terminology" the symptoms of a tooth abscess and "explain the seriousness of a tooth abscess when an individual suffers from these symptoms." Dkt. No. 110 at 2. He says that the parties disagree about what happened on June 20, 2018, when defendant Steve Kinziger informed the plaintiff about the abscess and dental staff put him on the waiting list for treatment. Id. at 2–3. The plaintiff says that three times he requested extraction of the affected tooth, but that the defendants delayed in performing the extraction, which led to worsening of his pain and symptoms. Id. at 3. The plaintiff had a dental appointment on September 12, 2019, but he was unable to attend it because of stomach issues and diarrhea he experienced that morning. Id. Dental staff cancelled his appointment when he did not show up for it. Id. He says he wrote to dental staff "several hours" later and informed them that when he was awoken "at approximately 10:40 am [he] was not feeling well, and [he] had to immediately empty [his] bowels; which was the cause of [his] delay." Id. at 3–4. The plaintiff claims that the defendants, as dentists, were aware of his tooth abscess and the symptoms he suffered from;

but he says the defendants "never once checked to see if the Plaintiffs symptoms had worsen[ed]" or made "any attempts to provide him with pain medication or antibiotics." Id. at 4. The plaintiff asserts that a neutral expert "must be appointed to explain for the record the medical science as to why '[a]ny tooth abscess is serious,' and 'any dentist knows that' it would be an act of deliberate indifference to intentionally ignore for seven (7) days a prisoner's complaint of suffering from the adverse symptoms of this dangerous dental condition." Id. at 5 (quoting Dobbey v. Mitchell-Lawshea, 806 F.3d 938, 940 (7th Cir. 2015)).

The defendants respond that the plaintiff "has not made a showing that the issues on these claims are so complex or unclear that the assistance of a court-appointed expert are [*sic*] necessary." Dkt. No. 113 at 2. The defendants agree that a tooth abscess generally is a serious medical condition, but they contend that "not all fistula or abscesses are alike." Id. at 3. They claim that some abscesses, like the plaintiff's, do not require immediate treatment and can be left alone "for years," if the patient is "not in discomfort." Id. They also do not dispute that the plaintiff's stomach issues could have been symptoms of his abscess, but they assert that between the onset of those symptoms on September 12, 2019 and the extraction of his tooth on September 19, 2019, the plaintiff "never filed [*sic*] out a health service request or sought medical treatment for 'flu like symptoms.'" Id. A guard instead provided as the reason for his no-show at his September 12, 2019 appointment that the plaintiff "was still washing his face and slowly getting ready." Id. at 4. The defendants

4

contend that it is unnecessary to appoint a neutral expert to review the plaintiff's medical records regarding his stomach issues because he never reported those issues, so "there is no medical data to review." Id.

Under Federal Rule of Evidence 706, the court may appoint a neutral expert "to interpret complex information for the trier of fact." DeJesus v. Godinez, 720 F. App'x 766, 772 (7th Cir. 2017) (citing Kennedy v. Huibregtse, 831 F.3d 441, 443 (7th Cir. 2016)). The court has "broad discretion" to decide whether to appoint an expert and should do so only when the expert will "aid the court," even if "the expert's opinion incidentally benefits a party." Martin v. Redden, 34 F.4th 564, 569 (7th Cir. 2022) (citing Rowe v. Gibson, 798 F.3d 622, 632 (7th Cir. 2015); and Ledford v. Sullivan, 105 F.3d 354, 358–59 (7th Cir. 1997)). District courts appoint neutral experts only infrequently, and courts should invoke Rule 706 to appoint such an expert "'only in rare and compelling circumstances.'" Walker v. McArdle, 861 F. App'x 680, 685 (7th Cir. 2021) (quoting Monolithic Power Systems, Inc. v. O2 Micro Int'l Ltd., 558 F.3d 1341, 1348 (Fed. Cir. 2009)).

The parties agree that an abscess generally is a serious medical condition and that it may cause symptoms such as "stomach pain, nausea, and vomiting." Dkt. No. 113 at 3; Dkt. No. 117 at 2 (both citing Dobbey, 806 F.3d at 940). The court does not need an expert to confirm these undisputed facts. But the defendant's position that "not all fistula or abscesses are alike" suggests there is a need for an expert to explain whether or why the plaintiff's abscess is one of those that required immediate treatment. If an expert were to conclude

5

that his abscess was not one that required immediate treatment, then the defendants could not be deliberately indifferent for delaying treatment of it. But if the expert concluded that the plaintiff's abscess did require immediate treatment, it is possible the defendants violated his rights by failing to treat it promptly.

The court nonetheless concludes that it does not require the aid of a neutral expert to decide the defendants' motion for summary judgment. It is a question of law, not fact, whether the defendants' failure to provide prompt treatment of the plaintiff's abscess when it had worsened and became painful constituted deliberate indifference. The Seventh Circuit has noted that "[a]ny minimally competent dentist who knows that a patient has reported an abscess also knows that if the report is correct the patient needs prompt medical treatment." See Dobbey, 806 F.3d at 940. The court explained that "[a] dentist demonstrates deliberate indifference by failing to treat the patient promptly, thus prolonging the patient's pain, *while knowing* that the patient may well be in serious pain that is treatable." Id. (emphasis added).

The court must determine whether there are disputed facts regarding whether the defendants *were aware* of the plaintiff's serious medical condition (the worsening abscess) *and disregarded it* by delaying treatment. The defendants insist they had no such notice because the plaintiff failed to report his symptoms on September 12, 2019. Dkt. No. 113 at 3–4. The plaintiff says he reported his stomach issues hours after he missed the September 12, 2019 appointment and, in any event, the defendants should have known that the

stomach issues were a side-effect of an abscess and should have inquired whether the plaintiff was suffering from those symptoms. Dkt. No. 117 at 2–3. The question, in other words, is whether the defendants had notice of the plaintiff's condition on September 12, 2019—either directly or circumstantially because they knew generally that he had an abscess—and failed to respond properly to it. The opinion in Dobbey demonstrates that if the defendants had notice of the plaintiff's condition and failed to act, they were deliberately indifferent. Dobbey, 806 F.3d at 940. If they had no notice of his condition, however, they cannot have been *deliberately* indifferent to it. A neutral expert will not be able to shed light on whether the defendants were aware of the plaintiff's condition or were deliberately indifferent to it because he or she will have no personal knowledge about those topics. Because appointing a neutral expert would not aid the court in deciding these questions for the purpose of summary judgment, the court will deny the plaintiff's request to appoint one.

It is possible that if this case proceeds to trial, expert testimony will be necessary to explain to a jury the seriousness of an abscess and the symptoms a dental expert might see which indicate an abscess that requires immediate extraction or treatment. But the court does not need that testimony to determine whether there are material disputes of fact about whether the defendants were aware of and deliberately indifferent to the plaintiff's need for treatment of his abscess. The court will deny the plaintiff's motion but again will do so without prejudice so that he may renew the motion if the case proceeds beyond summary judgment.

7
Case 2:20-cv-00617-PP   Filed 06/08/23   Page 7 of 14   Document 122

## II. Motion for Extension of Time (Dkt. No. 111)

The plaintiff has asked the court to extend his deadline to respond to the defendants' motion for summary judgment until after it has decided his motion to appoint a neutral expert. Dkt. No. 111. The plaintiff's response to the defendants' motion for summary judgment initially was due on December 19, 2022. Dkt. No. 107. The plaintiff requested, and the court granted, an extension of that deadline to January 6, 2023. Dkt. No. 109. Rather than filing his response by the extended deadline, the plaintiff filed the above motion to appoint a neutral expert and requested an extension of time until the court had decided that motion. He then requested, and the court granted, an additional extension of time to file his reply brief in support of the motion for a neutral expert. Dkt. Nos. 115, 116. It is now *more than five months* past the original deadline for the plaintiff to file his response materials, and the plaintiff still has not filed them. The plaintiff has arranged to obtain additional extensions to the deadline by the nature of the motions he has filed in the meantime and the extensions the court has given him to brief those motions.

Below, the court has set ***a final deadline*** for the plaintiff to prepare and file his response to the defendants' motion for summary judgment. If the plaintiff does not file his response materials ***in time for the court to receive them by the below deadline***, the court will consider the defendants' motion for summary judgment unopposed and will rule on it without the plaintiff's input—just as it warned him it would in the initial summary judgment notice. Dkt. No. 107 at 2.

8

### III. Motion to Appoint Counsel (Dkt. No. 118)

In February of this year, the plaintiff filed a motion asking the court to appoint counsel for a limited purpose—"to obtain sworn statements from two Department of Correction's (DOC) employees who's [*sic*] account of the events that transpired in this case is [*sic*] highly relevant to the misstatement of facts that the Defendants have presented to the Court." Dkt. No. 118 at 1. The plaintiff says the defendants deny that any correctional officers contacted the prison's dental staff on September 19, 2019 to report that he was in pain and needed immediate dental care. Id. He says the defendants report that the plaintiff already was scheduled to be seen September 19, 2019 to make up for his missed appointment a week earlier. Id. (citing Dkt. No. 98 at 11; Dkt. No. 113 at 4). The plaintiff insists, however, that he spoke with an officer who "recalled the aforementioned event exactly as the Plaintiff described the officers' actions in his amended complaint," but no one contacted this officer to obtain his statement about the events. Id. at 2. The plaintiff cites "Attachment 1," which is his declaration attesting to the conversation with the officer. Id.; Dkt. No. 119. The plaintiff claims that without counsel to assist him in obtaining statements from the two correctional officers, there will "be no record" of their version of the incident. Dkt. No. 118 at 2. The plaintiff also attached his letter to a law firm requesting representation and the law firm's response declining his request. Dkt. No. 120. He says he "has written a countless amount of letters" to other lawyers or firms "in an attempt to obtain representation." Dkt. No. 118 at 2.

In a civil case, the court has the discretion to recruit counsel for individuals unable to afford counsel. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866–67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654–55 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate

those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490–91. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff's efforts to obtain an attorney on his own satisfy the first of the above requirements for recruiting counsel. But he has not satisfied the second requirement. The plaintiff seeks recruitment of an attorney only to help him obtain statements from two correctional officers. During the almost three-year pendency of this lawsuit, he has filed numerous motions, requests, letters and other documents. He usually accompanies his motions with a declaration, citations to cases and statutes and exhibits. The plaintiff has shown no signs of intellectual difficulties or limitations that hinder his ability to competently

represent himself. This motion is yet another example—the plaintiff does not request the assistance of an attorney to prepare or file his response to the defendants' motion for summary judgment; he asks for assistance only in obtaining statements from two state employees. His request is direct and limited, and he filed a declaration and exhibits in support—as he did in support of his of his motion to appoint a neutral expert, which itself is a request that *pro se* litigants rarely make or even know to make. The court cannot conclude that the plaintiff is one of those *pro se* litigants most in need of an attorney's assistance to effectively litigate this case.

The court understands the plaintiff's concern that he may not be able to obtain statements from correctional officers that he believes are necessary to dispute the defendants' account of the events on September 19, 2019. But the court believes the plaintiff can obtain those statements on his own. To that point, he avers that he spoke with one of the correctional officers two weeks before filing his motion to appoint counsel, and that officer remembered the events of September 19, 2019 and relayed his version to the plaintiff. Dkt. No. 119. If the plaintiff has been able to speak with this officer and discuss his memory of the events, there is no reason for the court to believe that the plaintiff cannot also obtain a statement from the officer about his recollection. If not, the plaintiff can relay his own account of the events and tell the court that he was not able to obtain a statement from the correctional officers.

The court will deny the plaintiff's motion for appointment of counsel.

## IV. The Plaintiff's Motion Seeking Clarification (Dkt. No. 121)

On April 3, 2023, the court received from the plaintiff a motion asking "that the Court ascertain whether or not res ipsa loquitur can substitute for expert testimony in this case." Dkt. No. 121 at 1. The plaintiff reminds the court that it allowed him to proceed on a state-law negligence claim. Id. He says that in their summary judgment motion, the defendants have alleged that urgent dental needs were to be seen in twenty-four hours, but that the defendants have not explained why they did not treat his need as urgent and address it prior to the imposition of COVID-19 restrictions. Id. at 2. The plaintiff cites Wisconsin case law which states that Wisconsin law "allows application of res ipsa loquitur as a substitute for expert testimony in extreme cases where the physician's negligence is obvious," like when a surgeon leaves a sponge or foreign object in a patient, or removes the wrong body part. Id. at 3 (citing Gil v. Reed, 381 F.3d 649, 659 (7th Cir. 2004)). The plaintiff asks this court to "determine if the facts that support his state-law claim of negligence suffice as res ipsa loquitur." Id.

The court will deny the plaintiff's motion as procedurally improper. The defendants have filed a motion for summary judgment. The plaintiff has had an extensive amount of time to respond to that motion, and the court is going to give him more. If the plaintiff believes that there is a legal basis for the court to deny the defendants' motion, he should make that argument in his response. He does not get to ask the court for a "pre-ruling ruling" on his legal arguments. If the plaintiff believes that the case he cites applies to his

circumstances, he can make that argument in his response to the motion for summary judgment. If he makes it, the court will rule.

## V. Conclusion

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint a neutral expert. Dkt. No. 110.

The court **DENIES** the plaintiff's motion for an extension of time. Dkt. No. 111.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 118.

The court **DENIES AS PROCEDURALLY IMPROPER** the plaintiff's motion for clarification. Dkt. No. 121.

The court **ORDERS** that by the end of the day on **July 14, 2023**, the plaintiff must file his response materials to the defendants' motion for summary judgment. If the court does not *receive those materials by the end of the day on July 14, 2023,* the court will consider the defendants' motion unopposed and will rule on it without the plaintiff's input. The court will not grant the plaintiff any further extensions of time to file his response.

Dated in Milwaukee, Wisconsin this 8th day of June, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**